```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                        HOUSTON DIVISION
```

SAVANAH ILISE SMITH, §
BRANDY LEIGH WILKISON, and §
PAMELA GENE KARM, Individually §
and as Representatives of the §
ESTATE OF ALLAN KEITH SMITH, §
Deceased, §
 §
            Plaintiffs, §
 § CIVIL ACTION NO. H-06-0462
v. §
 §
HALLIBURTON COMPANY, KELLOGG, §
BROWN & ROOT SERVICES, INC., §
and KELLOGG, BROWN AND ROOT, §
INC., §
 §
            Defendants. §

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Savanah Ilise Smith, Brandy Leigh Wilkison, and Pamela Gene Karm, individually and as representatives of the Estate of Allen Keith Smith, deceased, filed this action in Texas state court against defendants, Halliburton Company, Kellogg, Brown & Root Services, Inc., and Kellogg, Brown & Root, Inc, alleging negligence stemming from a suicide bomb attack on a base in Iraq.[1] Defendants timely removed the action to this court asserting federal question and federal officer jurisdiction under 28 U.S.C. §§ 1441 and 1442.[2] Pending before the court are Defendants' Motion

---

[1]Plaintiffs' Original Petition, contained in defendants' Notice of Removal, Docket Entry No. 1, Exhibit A2 attached thereto.

[2]See defendants' Notice of Removal, Docket Entry No. 1, and Plaintiffs' Original Petition, Exhibit A2 attached thereto.

to Dismiss Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure (Docket Entry No. 4), Plaintiffs' Response (Docket Entry No. 11) and Defendants' Reply in Support of Motion to Dismiss Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. For the reasons explained below, Defendants' Motion to Dismiss will be denied.

### I.  Factual Allegations

Plaintiffs allege the following.[3]  On or about December 21, 2004, a suicide bomber walked into the mess hall at Forward Operating Base (FOB) Marez in Mosul, Iraq, and detonated explosives packed with ball bearings and other shrapnel.  Allen Keith Smith was eating lunch at the mess hall and was killed by the massive explosion, along with fourteen other United States military personnel, three other United States civilians, three members of the Iraqi National Guard, and one unidentified person.[4]  Sixty-two people were wounded.

Plaintiffs further allege that defendants directly or indirectly owned, operated, and had control of the mess tent.  They

---

[3]Plaintiffs' Original Petition, contained in defendants' Notice of Removal, Docket Entry No. 1, Exhibit A2 attached thereto.

[4]The petition seems to indicate that Smith was a United States civilian, and not a member of the United States military.  It is unclear from the pleadings whether "United States civilian" refers to a federal government employee working in Iraq or an employee of a government contractor.  Neither plaintiffs nor defendants have made any arguments based on Smith's status.

allege that defendants were in charge of mess tent operations, including providing security for people entering into and eating in the mess tent. Prior to the explosion defendants had been repeatedly warned that attacks were expected at FOB Marez, particularly during the Christmas season in December of 2004.

Plaintiff filed this action in the 11th Judicial District of Harris County, Texas, alleging that defendants were negligent in (1) failing to properly secure the mess tent, (2) failing to properly monitor the mess tent, (3) allowing a large number of people to gather at the mess tent at the same time, (4) not providing a search of the people who entered into the mess tent, (5) failing to have a secure perimeter around the mess tent, (6) failing to warn people that came into the mess tent that defendants had provided no security, and (7) failing to take reasonable precautions to make the mess tent safe from attacks and explosions of the type that killed Smith. As a result of this negligence, plaintiffs allege that the suicide bomber was able to enter and detonate explosives, killing Smith and twenty-one other people. Defendants timely removed the action to this court.[5]

## II. **Political Question**

Defendants argue that plaintiffs' suit should be dismissed under the political question doctrine. "The political question

---

[5]Notice of Removal, Docket Entry No. 1.

-3-

doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." Japan Whaling Ass'n v. American Cetacean Society, 106 S.Ct. 2860, 2866 (1986).  Because political questions are non-justiciable, courts lack jurisdiction to consider such claims.  Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum, 577 F.2d 1196, 1203 (5th Cir. 1978).

The following six tests determine the existence of a political question:

> (1) a textually demonstrable commitment of the issue to a coordinate political department;
>
> (2) a lack of judicially discoverable and manageable standards;
>
> (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;
>
> (4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;
>
> (5) an unusual need for unquestioning adherence to a political decision already made; or
>
> (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Baker v. Carr, 82 S.Ct. 691, 710 (1962).  These six tests "are probably listed in descending order of both importance and certainty."  Vieth v. Jubelirer, 124 S.Ct. 1769, 1776 (2004).  The political question doctrine is not applied unless one of the six

factors is "inextricable from the case at bar[.]"  Baker, 82 S.Ct. at 710.  In determining if a political question exists, the court analyzes the claim "as it would be tried, to determine whether a political question will emerge."  Occidental, 577 F.2d at 1202.

Defendants argue that the decisions at issue in this case are textually reserved to the political branches.  They note that FOB Marez is located in Mosul, a center of armed resistence in Iraq and the site of several attacks against the United States military, including the mess tent suicide bombing.  Article II, section 2 of the United States Constitution appoints the President Commander in Chief of the armed forces.  Article I, section 8 grants to Congress authority to raise and support Armies, to provide and maintain a Navy, and to make rules for the governing and regulation of the land and naval forces.  Defendants argue that if this case proceeds it will require a determination as to whether the force protection standards promulgated by the commander of FOB Marez were adequate and whether subordinate commanders adhered to those standards.

Defendants further argue that there are no judicially manageable standards for the resolution of the issues in this case. To determine whether they were negligent in operating the mess tent, defendants argue that the court would have to substitute its judgment for that of the United States military's on the following issues:  security and force protection measures at FOB Marez at the time of the suicide bombing; the military's risk assessment on the

terrorism threat at FOB Marez; whether the military adequately conveyed the terrorism threat to defendants; and whether procedures in place for mess tent operations adequately balanced the need for security with the need to feed large numbers of personnel. Defendants cite various authorities binding within the Department of Defense and the Army for the proposition that the United States military has plenary control over force protection and anti-terrorism programs on military bases.[6]

Plaintiffs respond that their petition does not question the force protection policies of the military at FOB Marez, but instead seeks to hold defendants liable for their failure to carry out their duties and responsibilities under those policies. Plaintiffs have requested discovery to ascertain what instructions, general orders, and/or policies defendants were expected to comply with in operating the mess tent. The issue, as presented by plaintiffs, is defendants' alleged negligence in carrying out its designated

---

[6]Plaintiffs object to defendants' inclusion of Department of Defense ("DoD") Instruction 2000.16, DoD Instruction 3020.41, DoD Directive No. 2000.12, Army Regulation 700-137, Army Regulation 715-9, Army Field Manual 3-100-21 and two DoD Public Affairs releases detailing Defense Department Briefings. Plaintiffs object on the grounds that the documents are outside of plaintiffs' petition and are inadmissable hearsay. Plaintiffs' Response to Defendants' Motion to Dismiss, Docket Entry No. 11, ¶ 10. Both objections are without merit. The court may consider matters outside of plaintiffs' petition when determining if jurisdiction exists. See Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343-44 (5th Cir. 2002). The documents are official publications and therefore are self-authenticating. Fed. R. Evid. 902(5).

responsibilities in operating the mess tent, not the United States military's security procedures at FOB Marez.

In their motion to dismiss defendants cite several cases to support dismissal based on the political question doctrine, including Zuckerbraun v. General Dynamics Corp., 755 F.Supp. 1134 (D. Conn. 1990), Nejad v. United States, 724 F.Supp. 753 (C.D. Cal. 1989), and Bentzlin v. Hughes Aircraft Co., 833 F.Supp. 1486 (C.D. Cal. 1993).  These cases are all distinguishable from the case at bar.

In Bentzlin family members of marines killed in combat when a United States Air Force missile struck their vehicle sued the manufacturers of the missile alleging a manufacturing defect. Bentzlin, 833 F.Supp. at 1487.  The court dismissed on several grounds, including the political question doctrine.  Id. at 1497-98.  The court stated that "generally, civilians injured at the hands of the military do not raise political questions; soldiers injured at the hands of the military raise political questions. The relationship between soldiers and the military is indubitably within the province of the Executive."  Id. at 1498.  The present case is a suit by a civilian, not a soldier, sailor, or airman, who was injured at the hands of a terrorist, not the United States military.

The Nejad court dismissed claims by the families and economic dependents of people killed when the United States military shot down an Iranian civilian flight.  Nejad, 724 F.Supp. at 754.

Plaintiffs sued the United States and defense contractors who supplied the ship or parts of its equipment and systems. Id. The Nejad plaintiffs claimed they were not questioning the President's decision to send United States warships into the Persian Gulf but only the negligent manner in which the President's decision was carried out, an argument the court found unconvincing. Id. at 755. Plaintiffs here argue that they are not questioning the military's decision-making at all, but rather are questioning the manner in which defendants carried out their duties and responsibilities. There is a basic difference between questioning the military's execution of a mission and questioning the manner in which a contractor carries out its contractual duties.

Finally, in Zuckerbraun the administrator of the estate of a sailor killed when an Iraqi aircraft fired on the USS Stark filed suit against defense contractors involved in the development and marketing of the ship's anti-missile and weapons systems. Zuckerbraun, 755 F.Supp. at 1135. The court held that the case involved a non-justiciable political question. Id. at 1142. It stated that on the issue of causation the court would have to examine the appropriateness of the rules of engagement and the standing orders, as well as evaluating the appropriateness of the reaction of the USS Stark's crew. Id. Although Zuckerbraun is most factually similar to this case, it is different in one important respect: Defendants, not the military, are alleged to have been in control of the mess tent. Issues of causation,

therefore, will not necessarily involve questioning the military's decisions.

Despite defendants' arguments to the contrary, the court cannot analyze the case as it would be tried because too many crucial facts are not in evidence. Even if the court accepts defendants' arguments regarding military command and control over force protection and anti-terrorism, factual questions remain. Plaintiffs allege that defendants had been warned of the high probability and likelihood of an attack at FOB Marez.[7] If the military had been warned that there was likely to be an attack on FOB Marez but failed to warn defendants, the case might be inexorably intertwined with constitute political questions. But this fact, like many others, remains to be established. Other relevant questions are whether defendants' contract required them to institute force protection procedures in operating the mess tent. If so, did defendants comply with their contract? Did defendants comply with the military's rules of engagement, standing orders, and other policies governing force protection and anti-terrorism procedures? Were defendants provided with advance warning of potential attacks by the military?

The answers to these questions may elicit facts that answer the central inquiry: Were defendants entrusted with mess tent security, and did they negligently carry out their duties, or did

---

[7]Plaintiffs' Original Petition, ¶ 12(f), contained in defendants' Notice of Removal, Docket Entry No. 1, Exhibit A2 attached thereto.

the military retain responsibility for security of the mess tent? The former does not necessarily implicate a political question, while the latter almost certainly does.  Regardless of how plaintiffs try to frame their case, if the military alone was responsible for security at the mess tent, it is the military's conduct, not that of defendants, that the court would be called upon to analyze.  This analysis would likely run afoul of the political question doctrine and the "complex, subtle and professional decisions" of the United States military, which the Constitution has entrusted to the political branches of government. Gilligan v. Morgan, 93 S.Ct. 2440, 2446 (1973).

At this early stage of the litigation the court is reluctant to dismiss plaintiffs' complaint.  See Ibrahim v. Titan Corp., 391 F.Supp.2d 10, 16 (D.D.C. 2005).  Without the evidence to create a framework with which to analyze this case, the court cannot determine if its resolution would require second-guessing military decision-making.  The only decision-makers directly implicated by plaintiffs are defendants.  The factual issues unresolved in this case render premature a determination of whether plaintiffs' suit necessarily involves questioning the force protection measures of the United States military at FOB Marez.  Absent this determination the court cannot properly analyze whether the case is inextricably intertwined with a non-justiciable political question, and the court will not now dismiss the case on political question grounds.

### III.  Federal Tort Claims Act

Defendants also argue that plaintiffs' case should be dismissed under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2608-2680.  As sovereign, the United States is immune from suits unless it consents to be sued.  United States v. Mitchell, 100 S.Ct. 1349, 1351 (1980).  The FTCA constitutes a limited waiver of sovereign immunity by the United States for claims sounding in tort.  28 U.S.C. § 2674.  This limited waiver excludes "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war."  Id. at § 2680(j). The limited waiver includes several exceptions, including an exclusion of "any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war."  Id. at § 2680(j).

Defendants argue that the FTCA's combat activities exception preempts the state tort law action against them as defense contractors.  This argument is not without precedent.  The Supreme Court held that the discretionary function exception to FTCA liability preempted tort actions against defense contractors for design defects in military equipment.  Boyle v. United Technologies Corp., 108 S.Ct. 2510 (1988).  The Ninth Circuit relied on Boyle in finding that this preemption applied to the combat activities exception and bars tort claims against a weapons manufacturer. Koohi v. United States, 976 F.2d 1328, 1336-37 (9th Cir. 1992). Koohi involved a United States warship that shot down an Iranian

civilian aircraft after mistaking it for an Iranian military aircraft during the Iran-Iraq hostilities.  Id. at 1330.  The plaintiffs sued the United States and various government contractors involved in the construction of the allegedly defective military defense system used to shoot down the aircraft.  Id. at 1330-31.  The Ninth Circuit affirmed the dismissal of plaintiffs' claims against both the United States and the government contractors under the FTCA's combatant activities exception.  Id. at 1333.  The Koohi court first defined "time of war" under this exception to encompass a period of significant armed conflict that need not be governed by formal declarations of war.  Id. at 1334-35.  The Koohi court extended the combat activities exception to the manufacturer of the missile system at issue, stating that "one purpose of the combatant activities exception is to recognize that during wartime encounters no duty of reasonable care is owed to those against whom military force is directed as a result of authorized military action."  Id. at 1337.

    The court is not persuaded that the reasoning of Koohi applies to the present case.  Koohi can be distinguished on several grounds:  First, Koohi involved action by the United States military against a perceived enemy.  This case involves action by a hostile actor against the United States military.  The reluctance of the Ninth Circuit to extend the duty of reasonable care to perceived military targets would not apply here.  Second, unlike this case, the defendant in Koohi was sued for providing allegedly

-12-

defective products.  See Fisher v. Halliburton, 390 F.Supp.2d 610 (S.D. Tex. 2005) (stating that the FTCA's § 2680 "combatant activities" exception does not bar or preempt claims against a defense contractor other than in cases where the contractor has provided allegedly defective products to the United States military).  Finally, the plaintiffs in Koohi were not United States citizens but "perceived enemy" mistakenly targeted by the United States military.  But see Bentzlin v. Hughes Aircraft, 833 F.Supp. 1486 (C.D. Cal. 1993) (applying Koohi to a suit brought by survivors of United States soldiers).

Defendants have not brought to the court's attention, and the court has not discovered any case that extends Koohi to a situation such as this: a suit by United States non-military personnel against a defense contractor for negligently failing to secure against a hostile action.  Koohi's reasoning does not encompass this case, and the court declines to extend the Ninth Circuit's limited holding to the facts of this case.  The court concludes that the FTCA's combat activities exclusion does not preempt state law, and the FTCA does not shield defendants from potential liability.

Because defendants have not established that this case constitutes a political question, or that they are immune from suit under the FTCA, the court will not dismiss plaintiffs' causes of action against defendants at this time.  The court will grant plaintiffs' request for more discovery to determine relevant

jurisdictional issues.[8]  The court therefore orders that the parties complete discovery on the question of jurisdiction by July 10, 2006.  After completion of discovery, the parties may file motions for summary judgment on the jurisdictional issue by July 17, 2006.

## IV.  Conclusions and Order

For the foregoing reasons, Defendants' Motion to Dismiss (Docket Entry No. 4) is **DENIED**.  The parties have until July 10, 2006, to complete discovery on the jurisdictional issue.  Motions for summary judgment on jurisdiction must be filed by July 17, 2006.

**SIGNED** at Houston, Texas, on this the 16th day of May, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[8]Plaintiffs have also requested leave to amend their pleadings thirty days after defendants provide their discovery responses. Rule 15(a) states that a party "may amend the party's pleading once as a matter of course at any time before a responsive pleading is served[.]"  A Rule 12(b) motion to dismiss is not a responsive pleading. Fed. R. Civ. P. 7(a).  In this case, defendants have not filed an answer, instead filing a Rule 12(b)(6) motion to dismiss. Therefore, plaintiffs have the right to amend once as a matter of course, making their request for leave to amend premature.  Should plaintiffs wish to amend their petition once discovery has been completed and an answer filed, they may request leave to do so at that time and "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).